# GOETZ FITZPATRICK LLP

Attorneys at Law          www.goetzfitz.com

55 Harristown Road, Glen Rock, NJ 07452 |(T) 201-612-4444 | (F) 201-612-4455

Ronald D. Coleman
rcoleman@goetzfitz.com

February 13, 2015

**BY ECF**

Hon. Claire C. Cecchi, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King, Jr. Courthouse and Federal Building
50 Walnut Street
Newark, NJ 07101

> Re:     **North Jersey Media Group Inc. v. SarahPAC** *et al.*
>         **2:14-cv-00553-CCC-MF**

Dear Judge Cecchi:

We represent defendants in the referenced matter and write in response to the letter dated February 11, 2015 from counsel for plaintiff.

In that letter, plaintiff states that "the parties have been unable to finalize the settlement agreement" and asks that the court reinstate the motion to dismiss.  In fact, after extensive negotiation by telephone and email, all terms were finalized and memorialized.  A final execution version of the settlement agreement was transmitted by plaintiff to this office at 5:22 PM on Monday, February 9, 2014.

In transmitting the final agreement at the end of the day on Monday, plaintiff's email stated, "Please return a signed copy of the settlement agreement to me in pdf by the close of business tomorrow."  As plaintiff's counsel knows well, communication with our client, a prominent public figure with whom we deal through Alaska counsel, has involved some degree of delay.  While this "deadline" had been alluded to earlier by plaintiff, it appeared arbitrary then.  But on Monday, in light of the fact that the parties were in the process of obtaining signatures to the finalized agreement, it appeared meaningless.

Lawyers, of course, typically utilize phraseology such as this to spur others to action. Given the fact the agreement had been finalized and that none of its terms made time for the delivery of the execution copies "of the essence," there did not appear to be any reason for

 **GOETZ FITZPATRICK LLP**

special concern – though, in any event, we immediately forwarded the agreement to our counsel. In retrospect, it appears clear that, in fact, plaintiff was operating on a timeline of its own.

The hint to this is in plaintiff's letter of February 11th, which mentions the "independent" news of a decision in the Southern District of New York in *NJMG v. Pirro and Fox News*. Plaintiff would have the Court believe this opinion bears on the motion plaintiff now requests be re-calendared.  What plaintiff omits to mention, however, is that **plaintiff has been aware of Judge Ramos's decision since February 2nd**, when the court circulated a draft version of it to the parties.[1]  Chambers, we are told, advised the parties to expect the final order motion to be issued on the 13th, after the two sides had been given the opportunity to review certain redactions.

Having February 13th in mind, then, by all indications plaintiff's plan was to get the motion in **this** matter back on the active calendar before the *Pirro* decision came out – hence the Tuesday "deadline."  Then, "independently," after the *Pirro* decision would be issued officially, plaintiff presumably planned to "advise" Your Honor about it and suggest that the Court consider it in rendering its decision on the motion which, by coincidence, had just been added to the active calendar a few days earlier.[2]  Thus, seeking to extract itself from the settlement to which it agreed but wishing not to appear to the Court as the deal-breaker, plaintiff set a seemingly arbitrary Tuesday "deadline" knowing that there was a good chance it could not be met.

Far from the date having material significance for purposes of the settlement, the fact is that as Tuesday came and went plaintiff made no effort to inquire about the status of the supposedly signed agreement. That day also passed without plaintiff transmitting its own execution copy of the agreement to defendants.  That is not to say, however, that plaintiff had an uneventful Tuesday, for Judge Ramos surprised the *Pirro* parties and uploaded his decision on ECF earlier than expected:  on Tuesday, February 10th.[3]

Nonetheless, with Tuesday having passed, plaintiff sprang into action Wednesday morning, filing its letter to the Court and representing, less than accurately, that "the parties have been unable to finalize the settlement agreement," requesting that the case be reactivated and noting the "independent" coincidence of Judge Ramos's ruling with all this. Still and all, after receiving plaintiff's February 11th letter, we informed counsel that our clients, having already agreed to settlement terms after weeks of hard bargaining, were quite prepared to execute the agreement, though requested the correction of one character (i.e., a date represented as "13th" that

---

[1] Indeed, in a February 9th email, counsel for plaintiff wrote, without explaining more, that "since 1/29,  we believe that our position has strengthened."

[2] Indeed, this technique cannot but remind an observer of plaintiff's tack, set out in defendants' motion, of running to the courthouse in an attempt to file its complaint in this matter in the exceedingly narrow window of time between its transmission of a cease and desist notice to defendants and the virtually immediate compliance by the latter – all so that it could be alleged that defendants obstinately refused to honor the takedown demand.

[3] The opinion, in fact, is designated as an **Amended** Opinion and Order.  It is this use of the word "amended" that caused the undersigned to inquire about the timing of parties' awareness of the decision.

 GOETZ FITZPATRICK LLP

Hon. Claire C. Cecchi, U.S.D.J.
February 13, 2015
Page 3 of 3

should say "16th") prior to doing so.  Plaintiff's emailed response was, "We meant what we said. We will stand by our letter to the Court."

To be clear:  Defendants stand by their submissions as well, notwithstanding the outcome of another case based on other facts in another procedural posture in another jurisdiction.  On the other hand, defendants did enter into a settlement with plaintiff.  If the typographical error we noted can be corrected, defendants can provide their executed counterpart within one business day on the expectation that plaintiff will do the same.

The purpose of this submission, therefore, is to clarify the record, not to signal any lack of confidence on our clients' part in the Court's independent ability to assess the merits of defendants' motion.   Notwithstanding plaintiff's representation that "the parties have been unable to finalize the settlement agreement," the documented facts are these:

- There was a meeting of the minds as to each and every term of the settlement agreement;

- There was a memorialization of the same which was drafted, primarily, by plaintiff's counsel;

- That paper was merely awaiting execution, and notwithstanding plaintiff's insertion of a unilateral deadline by which to deliver the signed form, the settlement was in fact finalized as to each and every term; and

- Plaintiff has been aware of the Southern District of New York's decision in *Pirro* for over a week.

Defendants are at the Court's disposal if Your Honor requires any further information or action on their part.

Respectfully submitted,

Ronald D. Coleman

cc:  All counsel (ECF)