Jennifer A. Borg
Vice President, General Counsel
 & Secretary
North Jersey Media Group Inc.
1 Garret Mountain Plaza
Woodland Park, NJ 07424-0417
(973) 569-7680

Richard Weiss
William Dunnegan
Dunnegan & Scileppi LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------x

| | | |
|---|---|---|
| NORTH JERSEY MEDIA GROUP INC., | : | |
| Plaintiff, | : | |
| -v- | | 14 Civ. 0553 (CCC)(MF) |
| | : | |
| SARAHPAC, SARAH PALIN and JOHN DOE NOS. 1-5, | : | |
| Defendants. | : | |

----------------------------------------------------------------x

MEMORANDUM OF PLAINTIFF IN OPPOSITION TO THE
MOTION OF DEFENDANTS SARAHPAC AND SARAH PALIN
TO ENFORCE A PURPORTED SETTLEMENT AGREEMENT

Table of Contents

Table of Authorities .................................................................................................................... ii

Preliminary Statement ...................................................................................................................1

Statement of Facts..........................................................................................................................2

Argument .......................................................................................................................................2

       THERE WAS NEVER AN ENFORCEABLE SETTLEMENT
       AGREEMENT ................................................................................................................2

            A.    The Parties Did Not Reach An Agreement Before February 9,
                  2015, Because They Did Not Agree On The Language For
                  A Confidentiality Clause..............................................................................3

            B.    The Parties Did Not Reach An Agreement On February 9, 2015,
                  Because Palin Did Not Comply With NJMG's Express Conditions ...........4

            C.    The Conduct Of Palin's Counsel After The Deadline Passed
                  Demonstrates That The Parties Reached No Agreement On
                  February 9, 2015 ..........................................................................................8

Conclusion .....................................................................................................................................9

Table of Authorities

**Cases**

Big M, Inc. v. Dryden Advisory Grp.,
No. 08 Civ. 3567 (KSH), 2009 WL 1905106 (D.N.J. June 30, 2009)........................................... 2

Borough of Haledon v. Borough of North Haledon,
358 N.J. Super. 289, 817 A.2d 965 (App. Div. 2003) .................................................................. 2

Browne v. Poly-Chem Systems, Inc.,
2011 WL 9106 (N.J. App. Div. July 1, 2010)............................................................................... 3

Bus. Commc'ns, Inc. v. Banks,
91 So. 3d 1 (Miss. Ct. App. 2011),
aff'd, 90 So. 3d 1221 (Miss. 2012)................................................................................................ 4

Harrison v. Nissan Motor Corp. in U.S.A.,
111 F.3d 343 (3d Cir. 1997).......................................................................................................... 8

Johnson & Johnson v. Charmley Drug Co.
11 N.J. 526 (N.J. 1953) ................................................................................................................. 3

Leap Sys., Inc. v. Moneytrax, Inc.,
No. 05 Civ. 1521 (FLW), 2010 WL 2232715 (D.N.J. June 1, 2010)
aff'd, 638 F.3d 216 (3d Cir. 2011) ................................................................................................ 4

Leodori v. CIGNA Corp.,
175 N.J. 293, 814 A.2d 1098 (N.J. 2003) ..................................................................................... 8

Moran v. Davita,
No. 06 Civ. 5620 (JAP), 2013 WL 3811664 (D.N.J. July 22, 2013)......................................... 2, 3

Mortellite v. Novartis Crop Prot., Inc.,
460 F.3d 483 (3d Cir. 2006).......................................................................................................... 2

North Jersey Media Group Inc. v. Jeanine Pirro and Fox News Network, LLC,
No. 13 Civ. 7153 (ER), 2015 WL 542258 (S.D.N.Y. Feb. 10, 2015) .......................................... 5

Schutte v. Russ Darrow Grp., Inc.,
2012 WI App. 132, 345 Wis. 2d 62, 823 N.W.2d 840 ................................................................. 4

Trustees of First Presbyterian Church in Newark v. Howard Co. Jewelers,
12 N.J. 410, 97 A.2d 144 (N.J. 1953) ........................................................................................... 2

West Caldwell v. Caldwell,
26 N.J. 9, 138 A.2d 402 (N.J. 1958) ............................................................................................. 2

Plaintiff North Jersey Media Group Inc. ("NJMG") respectfully submits this memorandum in opposition to the motion of defendants SarahPAC and Sarah Palin (collectively "Palin") to enforce a purported settlement agreement.

Preliminary Statement

Palin's motion is an attempt to enforce an agreement that she never reached with NJMG. Although the parties reached a tentative compromise as to the settlement amount on December 18, 2014, the parties never reached an agreement concerning the other material terms of a settlement agreement, including a confidentiality clause. Moreover, both parties fully understood that there would be no enforceable agreement until both parties executed a written agreement.

After reaching that tentative compromise on the settlement amount on December 18, 2014, Palin stalled. More than a month later, at a settlement conference with Magistrate Judge Falk on January 29, 2015, counsel for NJMG advised the Court that if the parties could not finalize a settlement agreement within 10 days, then no settlement could be reached. Counsel for NJMG repeated this sentiment on February 9, 2015, telling counsel for Palin that "unless we have a signed agreement resolving this by the close of business tomorrow, we plan to write to the Judge and ask her to reactiv[ate] the pending motions, and decide them." (Dunnegan Dec. ¶ 20; Ex. F)  Later that day, counsel for NJMG emailed a draft agreement to counsel for Palin stating "Please return a signed copy of the settlement agreement to me in pdf by the close of business tomorrow." (Dunnegan Dec. ¶ 23; Ex. H) Palin did not sign and return the document before that deadline, or at any time thereafter.  (Dunnegan Dec. ¶ 24)  Palin did not pay, or even tender, the money that would have been due if there were an enforceable settlement agreement.  (Dunnegan Dec. ¶ 24)

Palin now argues that even though she failed to comply with the deadline that counsel for NJMG unambiguously set on February 9, 2015, the Court should relieve Palin of that failure because the deadline was just "lawyerly locution." (Dkt. 42-1 at 8) It was not. We intended to set a firm deadline for Palin to stop stalling and either commit to a settlement agreement or proceed with the litigation. We meant what we said. We do not understand how Palin could believe otherwise.

Statement of Facts

The relevant facts are set forth in the declaration of William Dunnegan, sworn to April 20, 2015, and, for the sake of brevity, will not be repeated.

Argument

THERE WAS NEVER AN ENFORCEABLE SETTLEMENT AGREEMENT

"Under New Jersey law, a settlement agreement is a form of contract, and courts must look to the general rules of contract law to resolve disputes over a settlement agreement." Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006)(citing Borough of Haledon v. Borough of North Haledon, 358 N.J. Super. 289, 817 A.2d 965, 975 (App. Div. 2003)). "A contract arises from offer and acceptance of terms that are sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Moran v. Davita, No. 06 Civ. 5620 (JAP), 2013 WL 3811664, at *4 (D.N.J. July 22, 2013)(quoting West Caldwell v. Caldwell, 26 N.J. 9, 24–25, 138 A.2d 402 (N.J. 1958)). "A valid offer contemplates the creation of a legal relationship with rights and duties upon its acceptance and the intention to assume liability." Big M, Inc. v. Dryden Advisory Grp., No. 08 Civ. 3567 (KSH), 2009 WL 1905106, at *14 (D.N.J. June 30, 2009)(citing Trustees of First Presbyterian Church in Newark v. Howard Co. Jewelers, 12 N.J. 410, 97 A.2d 144 (N.J. 1953)). Additionally,

"there [must] be an unqualified acceptance to conclude the manifestation of assent." Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (N.J. 1953).

"The party seeking to enforce the settlement bears the burden of proving a valid agreement exists." Moran v. Davita, Inc., No. 06 Civ. 5620 (JAP), 2013 WL 3811664, at *5 (D.N.J. July 22, 2013)(citing Browne v. Poly-Chem Systems, Inc., 2011 WL 9106 at *3 (N.J. App. Div. July 1, 2010)).  Palin has not met that burden.

A.        The Parties Did Not Reach An Agreement Before February 9, 2015, Because They Did Not Agree On The Language For A Confidentiality Clause.

On December 18, 2014, the parties had a tentative agreement in principle on the amount of the settlement. (Dunnegan Dec. ¶ 2; Ex. A)  However, the parties could not initially agree on whether there would be a confidentiality clause. (Dunnegan Dec. ¶ 3; Ex. B) Palin asserted that there must be a broad confidentiality provision. (Dunnegan Dec. ¶ 3; Ex. B)  NJMG disagreed.  (Dunnegan Dec. ¶ 3; Ex. B)  By January 13, 2015, the parties tentatively agreed that there would be a limited confidentiality clause, but could not agree on the specifics of what could, and could not, be disclosed. (Dunnegan Dec. ¶ 6) This inability to reach an agreement on the confidentiality clause meant that the parties had not reached even a tentative agreement. Moreover, neither party intended to be legally bound until they both executed a written agreement. (Dunnegan Dec. ¶ 7)

The identity of the parties demonstrates the materiality of the exact language of the confidentiality clause. Palin is a politician, and her political action committee did not want any hint of compromise associated with her name. (Dkt. 42 ¶¶ 4-5) (Dunnegan Dec. ¶ 4)  Palin states in her memorandum, "Defendants were unwilling to settle the claims if the decision to compromise would be used by plaintiff, a media organization, to make political and headline-generating hay." (Dkt. 42-1 at 6)   NJMG, on the other hand, is one of the largest news outlets in

3

New Jersey, and did not want to limit access to information that was a matter of public concern. (Dunnegan Dec. ¶ 5) On December 22, 2014, at 11:52 a.m., Mr. Dunnegan stated in an email to counsel for Palin that "We are unprepared at this stage to provide a confidentiality agreement. If this is a deal breaker, please let me know as soon as possible so that we can advise the Court." (Dunnegan Dec. ¶ 3; Ex. B) Specifically, NJMG did not want its reporters prohibited from writing about facts they learned from sources other than NJMG. NJMG management was not willing to impose a de facto "prior restraint" on its reporters' ability to report truthful facts about the settlement that it obtained from sources other than NJMG management.

Courts traditionally consider confidentiality clauses material to settlement agreements. See Leap Sys., Inc. v. Moneytrax, Inc., No. 05 Civ. 1521 (FLW), 2010 WL 2232715, at *9 (D.N.J. June 1, 2010), aff'd, 638 F.3d 216 (3d Cir. 2011)("Indeed, the Settlement took many months to materialize and confidentiality was a material term."). See also Bus. Commc'ns, Inc. v. Banks, 91 So. 3d 1, 13 (Miss. Ct. App. 2011), aff'd, 90 So. 3d 1221 (Miss. 2012)(disclosure of the parties' identities in violation of the confidentiality clause was a material breach); Schutte v. Russ Darrow Grp., Inc., 2012 WI App. 132, ¶ 12, 345 Wis. 2d 62, 823 N.W.2d 840 (Wis. App. 2012)(disclosure of the terms of the settlement was a material breach).

B.     The Parties Did Not Reach An Agreement On February 9, 2015,
       <u>Because Palin Did Not Comply With NJMG's Express Conditions.</u>

On January 29, 2015, counsel for the parties participated in a telephone conference with Magistrate Judge Falk. While the parties did not appear very far apart, Mr. Dunnegan recognized that Palin was stalling. (Dunnegan Dec. ¶ 8) The parties were no closer to a resolution than they were before Christmas. (Dunnegan Dec. ¶ 8) Mr. Dunnegan therefore advised the Magistrate Judge that if the action could not be settled in the next ten days, the matter could not be settled. (Dunnegan Dec. ¶ 8)

The next day, January 30, 2015, Mr. Dunnegan proposed new language for a confidentiality clause to Palin's counsel, asking "How about this?" (Dunnegan Dec. ¶ 9; Ex. C) Efforts to obtain a response from Palin's counsel proved frustrating. Mr. Dunnegan followed up several times with Palin's counsel, asking for updates on February 2, 2015, February 5, 2015 and February 9, 2015. (Dunnegan Dec. ¶¶ 10-16; Ex. D) But Palin's counsel failed to provide Mr. Dunnegan with Palin's comments on the proposed language. (Dunnegan Dec. ¶¶ 10-16) On Monday, February 9, 2015, Mr. Farkas could do no more than express his hope that Palin "should have something for you this week." (Dunnegan Dec. ¶ 16; Ex. D)

As Palin stalled, NJMG's position in this litigation strengthened. On February 2, 2015, District Judge Edgardo Ramos of the United States Court for the Southern District of New York informed the parties in North Jersey Media Group Inc. v. Jeanine Pirro and Fox News Network, LLC, 13 Civ. 7153 (ER), that he would deny Fox News' motion for summary judgment on the affirmative defense of fair use. (Dunnegan Dec. ¶ 17; Ex. E) Judge Ramos signed the order on February 10, 2015. While Judge Ramos' order does not bind this Court, its analysis of the fair use issue on substantially similar facts as in this case should prove compelling. North Jersey Media Grp. Inc. v. Pirro, No. 13 Civ. 7153 (ER), 2015 WL 542258 (S.D.N.Y. Feb. 10, 2015).

Despite this favorable decision for NJMG, Mr. Dunnegan continued to attempt to negotiate with counsel for Palin. After failing to get any substantive response from Palin's counsel between February 2, 2015, and February 9, 2015, however, Mr. Dunnegan reiterated to Palin's counsel in an email that "unless we have a signed agreement resolving this by the close of business tomorrow [February 10, 2015], we plan to write to the Judge and ask her to reactiv[ate] the pending motions, and decide them." (Dunnegan Dec. ¶ 20; Ex. F) This

established a deadline, the close of business on February 10, 2015, for executing a written settlement agreement. Mr. Dunnegan sent that email on February 9, 2015, at 12:34 p.m. (Dunnegan Dec. ¶ 20; Ex. F)

Eleven minutes later, at 12:45 p.m. on February 9, 2015, Mr. Farkas replied with "We suggest the following..." (Dunnegan Dec. ¶ 21; Ex. G) Mr. Dunnegan did not know with certainty whether this constituted a firm proposal, but suspected it was not. (Dunnegan Dec. ¶ 22) Palin's counsel had repeatedly stated in the last 10 days that they could not get in touch with their clients. (Dunnegan Dec. ¶ 22) It therefore seemed unlikely that they had secured substantive comments from Palin eleven minutes after Mr. Dunnegan presented them with a deadline. In addition, Mr. Farkas' use of the words "we suggest" indicated that Palin would only see this language if NJMG first agreed to it. Mr. Dunnegan therefore gleaned from Mr. Farkas' email that Palin's counsel was attempting to stall. (Dunnegan Dec. ¶ 22)

Nevertheless, Mr. Dunnegan was willing to allow Palin to conclude a settlement agreement by NJMG's deadline of the close of business on February 10, 2015. Mr. Dunnegan therefore replied at 5:22 p.m., "I think that we are in agreement as to the attached settlement agreement...<u>Please return a signed copy of the settlement agreement to me in pdf by the close of business tomorrow</u>." (Dunnegan Dec. ¶ 23; Ex. H)(emphasis added) Mr. Dunnegan wanted Palin to commit in writing to specific terms before taking any more of NJMG's time addressing terms that Palin had suggested, but to which Palin would not agree. (Dunnegan Dec. ¶ 23) By repeating the condition that the agreement must be concluded by the close of business on February 10, 2015, Mr. Dunnegan communicated a clear intent not to be bound unless the parties finalized the deal by that deadline. In any event, NJMG would still need to sign the written document that Palin returned before the deal would be finalized. (Dunnegan Dec. ¶ 23)

It is critical to recognize that the deadline in Mr. Dunnegan's email of February 9, 2015, at 5:22 p.m. was completely reasonable because it merely put the suggested language of Palin's counsel into the form of agreement that they had already approved, and asked them to return it signed. (Dunnegan Dec. ¶ 23) Mr. Dunnegan did not suggest new language, but only asked counsel for Palin to commit to the language that they themselves had proposed.

Palin did not agree to NJMG's terms within the deadline that Mr. Dunnegan had expressly communicated. (Dunnegan Dec. ¶ 24) In fact, Palin's counsel did not even contact Mr. Dunnegan until after the deadline had passed, and after Mr. Dunnegan had filed on February 11, 2015, a letter requesting that the Court reactivate and decide the pending motions. (Dkt. 36). The fact that Palin's counsel did not communicate with Mr. Dunnegan before the February 10, 2015, deadline demonstrates that they did not have authority from Palin to enter into a legally enforceable agreement, and that their purpose in suggesting the language on February 9, 2015, was to keep settlement talks in limbo.

Moreover, even if the Court suspended reality and concluded that Mr. Dunnegan's email at 5:22 p.m. on February 9, 2014, constituted a legally binding offer that Palin could accept, Palin did not accept the offer before the deadline passed. Palin does not argue otherwise. Rather, Palin argues that Mr. Dunnegan's express conditions were "lawyerly locution." (Dkt. 42-1 at 8) They were not. Mr. Dunnegan meant what he said.

Palin's argument that NJMG's deadline "came and went without [NJMG's] counsel calling or emailing to check the status of [Palin's] signing of the agreement" (Dkt 42-1 at 8) supports NJMG's position that the last version of the draft agreement Mr. Dunnegan sent, by its express terms, lapsed once the deadline had passed. NJMG had no reason to inquire about Palin's signing of the document because Palin never agreed to its terms, or provided any

7

comment, by the deadline. It would have made sense for NJMG's counsel to inquire about Palin's signature only if the deadline had been immaterial. It was not.

And NJMG had every right to establish that firm deadline. "The offeror is the master of his offer. An offeror may prescribe as many conditions, terms or the like as he may wish, including but not limited to, the time, place and method of acceptance." Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 348 n. 8 (3d Cir. 1997). See also Leodori v. CIGNA Corp., 175 N.J. 293, 306, 814 A.2d 1098, 1107 (N.J. 2003)("offeree must comply with offeror's prescribed manner of acceptance to create contract")(citing Restatement (Second) of Contracts § 60 (1981)). Given the extent to which Palin had failed to commit herself to any specific agreement for over a month, setting a firm deadline was eminently reasonable.

C.  The Conduct Of Palin's Counsel After The Deadline Passed Demonstrates That The Parties Reached No Agreement On February 9, 2015.

On February 11, 2015, after Mr. Dunnegan confirmed that the time for an agreement had passed, Mr. Coleman responded that his clients had identified a typo, and were prepared to sign the agreement provided the typo was rectified. (Dunnegan Dec. ¶ 26; Ex. I) However, if Palin's counsel believed that the parties had already reached a binding agreement on February 9, then conditioning their assent on correcting the typo made little sense.

Similarly, on March 3, 2015, Mr. Farkas emailed Mr. Dunnegan, asking: "I'm sure both of our clients would rather avoid the time and expense of an unnecessary settlement conference, given how close we all are. Do you think we can hammer something out?" (Dunnegan Dec. ¶ 27; Ex. J) Again, if Palin believed that the parties had already reached an agreement on February 9, 2015, Mr. Farkas would not have referred to the parties as "close" and asked if they could reach an agreement.

<u>Conclusion</u>

For the reasons set forth above, NJMG respectfully requests that the Court deny Palin's motion.

Dated:  New York, New York
April 20, 2015

JENNIFER A. BORG, ESQ.

By <u>   s/Jennifer A. Borg             </u>
Jennifer A. Borg
Vice President, General Counsel
  & Secretary
North Jersey Media Group Inc.
1 Garret Mountain Plaza
Woodland Park, NJ 07424-0417
(973) 569-7680

-and-

DUNNEGAN & SCILEPPI LLC

By <u>   s/Richard Weiss               </u>
Richard Weiss
William Dunnegan
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Attorneys for Plaintiff
  North Jersey Media Group Inc.

9