Jennifer A. Borg
Vice President, General Counsel
 & Secretary
North Jersey Media Group Inc.
1 Garret Mountain Plaza
Woodland Park, NJ 07424-0417
(973) 569-7680

Richard Weiss
William Dunnegan
Dunnegan & Scileppi LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------------x

| | | |
|---|---|---|
| NORTH JERSEY MEDIA GROUP INC., | : | |
| Plaintiff, | : | |
| -v- | | 14 Civ. 0553 (CCC)(MF) |
| | : | |
| SARAHPAC, SARAH PALIN and JOHN DOE NOS. 1-5, | : | |
| Defendants. | : | |

----------------------------------------------------------------x

        DECLARATION OF WILLIAM DUNNEGAN IN OPPOSITION TO THE
          MOTION OF DEFENDANTS SARAHPAC AND SARAH PALIN
           TO ENFORCE A PURPORTED SETTLEMENT AGREEMENT

        WILLIAM DUNNEGAN hereby declares pursuant to 28 U.S.C. § 1746:

        1.    I am a member of the Bar of the State of New York and have been admitted *pro hac vice* in this action. I am a member of Dunnegan & Scileppi LLC, attorneys for plaintiff North Jersey Media Group Inc. ("NJMG").

2. On or about December 18, 2014, NJMG and defendants SarahPAC and Sarah Palin (collectively, "Palin") tentatively agreed in principle upon Palin's payment of an amount to settle this case. Attached as Exhibit A is a true and accurate copy of the email Mr. Brian Farkas, counsel for Palin, sent to me at 6:29 p.m. on December 18, 2014.

3. The parties, however, could not initially agree on whether there would be a confidentiality clause. Palin asserted that there must be a broad confidentiality clause. NJMG disagreed. Attached as Exhibit B are true and accurate copies of emails between Mr. Farkas and me on December 22, 2014.

4. Shortly thereafter, Palin's counsel, Ronald Coleman, Esq., told me that Palin required a confidentiality clause because her political action committee did not want any hint of compromise associated with her name.

5. NJMG did not want to agree to a confidentiality provision because it is one of the largest news providers in New Jersey, and the lawsuit was a matter of public concern.

6. On or about January 13, 2015, the parties tentatively agreed that there would be a limited confidentiality clause. But, they could not agree on the specifics of what could, and could not, be disclosed. Palin's counsel and I continued to negotiate the wording of the provision.

7. While each side sent the other proposals, I understood that until the parties executed a formal written contract, neither party would be legally bound. I understood that Palin's counsel believed this as well. I did not have, at any time, authority to sign a settlement agreement on behalf of NJMG.

8. By the end of January, 2015, I had concluded that Palin was stalling. The parties were no closer to a final settlement than they were before Christmas. At a telephone

conference with Magistrate Judge Falk on January 29, 2015, I stated that the areas of disagreement appeared narrow, but that if the parties could not complete the settlement within ten days, then the settlement could not be completed.

9. On January 30, 2015, at 10:49 a.m., I sent an email to Palin's counsel. Attached as Exhibit C is a true and accurate copy of that email.

10. I followed up with Palin's counsel several times over the next ten days. Attached as Exhibit D is a true and accurate copy of a string of emails, sent between myself and Palin's counsel, Mr. Coleman and Mr. Farkas, between February 2, 2015, and February 9, 2015.

11. On Monday, February 2, 2015, at 6:29 p.m., I wrote to Mr. Coleman:

"Ron, any word on this?"

12. At 6:34 p.m., Mr. Farkas wrote back to me that:

"Hi Bill – We're expecting to be able to speak with our client tomorrow or Wednesday, and will get back to you ASAP afterwards."

13. After Wednesday passed without hearing from either Mr. Coleman or Mr. Farkas, I wrote back on Thursday, February 5, 2015, at 1:52 p.m., asking:

"Have you made any progress?"

14. At 1:56 p.m., Mr. Farkas responded:

"We'll be in touch shortly."

15. The rest of the week passed without any further word from Palin. On Monday, February 9, 2015, more than a week after I sent the January 30, 2015, email, I wrote counsel back at 8:15 a.m., asking again for an update:

"Have you made any progress?"

16. At 8:38 a.m., Mr. Farkas responded:

3

> "Working on it. **Should have something for you this week**."
> (Emphasis added.)

17.     On February 2, 2015, Hon. Edgardo Ramos of the United States District Court for the Southern District of New York informed NJMG and the defendants in North Jersey Media Group Inc. v. Jeanine Pirro and Fox News Network, LLC, 13 Civ. 7153 (ER), that he would deny defendants' motion for summary judgment on the ground of fair use. Attached as Exhibit E is a true and accurate copy of the email sent from Judge Ramos' chambers on February 2, 2015. Judge Ramos signed the order denying defendants' motion for summary judgment on February 10, 2015.

18.     I believe that Judge Ramos' order strengthened NJMG's position in this litigation.

19.     Nevertheless, I continued to negotiate with Palin's counsel from February 2, 2015, until February 9, 2015.

20.     After Mr. Farkas' last reply on Monday, February 9, 2015, in which he could not even commit to getting back to me by the end of that week, I wrote to Palin's counsel at 12:34 p.m. that day:

> "We told the Magistrate on 1/29 that if this settlement could not be finalized within 10 days, it cannot be finalized. We are no further along now than we were before Christmas. Moreover, since 1/29, we believe that our position has strengthened.
>
> Accordingly, unless we have a signed agreement resolving this by the close of business tomorrow, we plan to write to the Judge and ask her to reactiv[ate] the pending motions and decide them."

This email established the close of business on Tuesday, February 10, 2015, as the deadline to settle the suit. Attached as Exhibit F is a true and accurate copy of that email.

4

21. Eleven minutes later at 12:45 p.m., on February 9, 2015, Mr. Farkas responded:

"We suggest the following, which is essentially what you'd proposed before but with minor tweaks and the addition of a third clause:

Notwithstanding the foregoing, the parties further agree that: (1) news reporters for the plaintiff are free to report on the existence of the settlement, and about whatever facts they learn from sources other than NJMG; (2) the parties or their respective attorneys or agents may respond to questions about the litigation posed by any third party, except that statements about the case must be limited to confirming its settlement and directing the third party to the court file; and (3) this settlement specifically incorporates, and does not replace, the terms of the Confidentiality Agreement entered into by counsel on September 13, 2013.

Let us know."

Attached as Exhibit G is a true and accurate copy of that email.

22. I was unsure whether or not this was a firm proposal, or a stalling tactic. Up until then, Palin's counsel had maintained that they were unable to get in touch with their clients. It seemed unlikely that they had managed to convey my proposal to Palin, and get Palin's substantive response in the last 11 minutes, when they had been unable to do so in the last 11 days. Additionally, the language "We suggest the following" indicated to me that Palin had not yet seen the language that her counsel was proposing.

23. Palin's counsel's "suggested" language for the confidentiality provision seemed acceptable to me, and probably to NJMG. However, I did not want to spend my client's time considering that language because Palin had not firmly committed to it. I also wanted to keep the deadline I had set earlier in the day in place. Consequently, I inserted Palin's counsel's exact language into a draft agreement, and sent it in an email on February 9, 2015, at 5:22 p.m.:

5

> "I think that we are in agreement as to the attached settlement agreement.
>
> I am also attaching to this e-mail the 9/13/13 agreement, so there is no confusion as to what this is.
>
> Please return a signed copy of the settlement agreement to me in pdf by the close of business tomorrow."

This email communicated to Palin's counsel that Palin needed to return a signed copy of the agreement to me by the end of business on February 10, 2015. The deadline in this email was reasonable because it merely put the suggested language of Palin's counsel into the form of an agreement that they had already approved, and asked them to return it signed. In any event, by sending Palin a document to sign and return, I intended to make it clear that NJMG would not be bound by any settlement agreement until both parties signed a document. Attached as Exhibit H is a true and accurate copy of that email.

24. February 10, 2015, passed without Palin's counsel either returning a signed settlement agreement, communicating Palin's agreement, or asking for an extension of time within which to complete the agreement. Palin never made the payment that would have been due if a settlement agreement had been reached, or tendered such a payment.

25. On February 11, 2015, at 10:10 a.m., I filed as Dkt. 36, a letter asking the Court to reactivate Palin's motions, and decide them.

26. On February 11, 2015, at 2:35 p.m., Mr. Coleman sent me the following email:

> "Bill, Alaska informs me that the agreement contains an error -- it dates the previous agreement as September 13, but the actual date is September 16th (attached). If we make that correction, we can get it signed immediately. John has been in deps and that is the reason it has taken us so long to turn this around, but, as I said, if your office will make the correction we can get it signed today."

6

Attached as Exhibit I is a true and accurate copy of that email.

      27.    On March 3, 2015 at 7:12 p.m., Mr. Farkas wrote me the following email:

"Bill,

Just wanted to check in with you, given our conversation with the court last week. I'm sure both of our clients would rather avoid the time and expense of an unnecessary settlement conference, given how close we all are. Do you think we can hammer something out?"

Attached as Exhibit J is a true and accurate copy of that email.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed this 20th day of April 2015.

                                                   /s/ William Dunnegan
                                                       William Dunnegan