

**Ronald D. Coleman**
*Member of New Jersey
and New York Bars*
rcoleman@archerlaw.com
201-498-8544 Direct

Court Plaza South, West Wing
21 Main Street, Suite 353
Hackensack, NJ 07601-7095
201-342-6000 Main
201-342-6611 Fax
**www.archerlaw.com**

December 11, 2015

<u>**ECF**</u>

Hon. Claire C. Cecchi, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King, Jr. Building and U.S. Courthouse
50 Walnut Street
Newark, NJ  07101

     Re:   North Jersey Media Group Inc. v. SarahPac et al.
           2:14-cv-0553-CCC-MF

Dear Judge Cecchi:

     We represent defendants and write per the Court's instructions to supplement the prior briefing regarding two issues in connection with our clients' pending motion to enforce the settlement agreement dated February 9, 2015: (1) the enforceability of an unsigned settlement agreement under applicable law, and the claim by plaintiff, raised to our knowledge for the first time in last week's telephone conference, that counsel for defendants lacked settlement authority.

     The first issue is dealt with by a wealth of New Jersey cases.  This Court summarized the long history of this jurisprudence, laying out the law succinctly and applying it on-point in *Longo v. First Nat'l Mortg. Sources*, 2010 U.S. Dist. LEXIS 80510 (D.N.J. July 14, 2010), as follows:

> [U]nder New Jersey law, as long as the parties orally agree on the essential terms, a contract is formed. This is true even though the parties contemplate the later execution of a formal document to memorialize their undertaking. Indeed, as long as those essential terms are agreed to, the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges. In the context of settlement negotiations, the fact the written document was never executed is irrelevant to the enforceability of the agreement. Thus, even oral settlement agreements are valid and enforceable. . . .

> Plaintiffs assert that the settlement is not binding because the Settlement Agreement was not executed. Plaintiffs claim that the Settlement Agreement was "negotiated between counsel without the input or ultimate agreement of Plaintiffs" and that the email exchanges between Plaintiffs' counsel and FNB did not result in a meeting of the minds since the parties did not agree on "the merits of the case".

Hon. Claire C. Cecchi, U.S.D.J.
December 11, 2015
Page 2

The Court is not persuaded by Plaintiffs' characterization of their acceptance of FNB's offer as "tentative" because nothing in the record corroborates that Plaintiffs' agreement to settle was conditional or that Plaintiffs reserved their right to withdraw acceptance at a later time. . . .

A contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms. As such, an oral agreement as to the essential terms of a settlement is valid even though the parties intend to reduce their agreement to a formal writing at a later time. In the instant matter, Plaintiffs' counsel accepted FNB's settlement offer of $5,000 on behalf of Plaintiffs on July 7, 2008. The detailed terms of the settlement were later set forth in a written Settlement Agreement. Plaintiffs have not provided the Court with any documentation evidencing a dispute as to the essential terms of the settlement.

**The fact that Plaintiffs did not execute the written Settlement Agreement is irrelevant to its enforceability. . . .**

*Longo*, 2010 U.S. Dist. LEXIS 80510 at 5-10 (emphasis added; citations and internal quotes omitted.

Similarly, in *Thorner v. Sony Computer Entm't Am. LLC*, 2013 U.S. Dist. LEXIS 36775 (D.N.J. Mar. 18, 2013), essentially the same arguments were made in attempt to avoid a settlement agreement, and rejected.  As here, there was no signed final agreement.  As here, key evidence before the Court consisted of a series of settlement emails among counsel that memorialized the extent and progress of negotiations punctuated by the sudden insertion of a "poison-pill" term rendering settlement impossible by one party, who then went on to claim that there was never a meeting of the minds.  Nonetheless, the Court found that despite this fact – and despite the absence of a signed agreement – the settlement was enforceable because the key terms, as evidenced by the ongoing email communications, were never in dispute despite the last-minute about-face, exactly as is the case here.

The Court held that the claim as to the "unsettled terms" – analogous to the invented "sign by tomorrow or there's no deal"  term manufactured by plaintiff hereafter weeks of negotiation that never included any suggestion that time was of the essence – could not constitute grounds for claiming a lack of meeting of the minds because it was plainly a *post facto* invention to rationalize backing out of the deal:

These other terms were not discussed during the protracted negotiations . . . nor were the terms raised at all until after Thorner decided to renege on the Settlement Agreement. This vitiates his claim that the attempt to void the agreement on August 9, 2012 was based on the fact that these terms were missing from that agreement. Thus, the Court finds that the terms essential to settling this litigation remain those delineated in the August 7, [20] 2012 email and the draft Settlement Agreement.

*Thorner*, 2013 U.S. Dist. LEXIS 36775 (D.N.J. Mar. 18, 2013) at 19-20 (citations omitted). Notwithstanding the lack of a signed, final contract, the Court granted the motion to enforce the agreement. It should do so here as well, and as New Jersey courts do routinely.

Hon. Claire C. Cecchi, U.S.D.J.
December 11, 2015
Page 3

Finally, there is no basis for plaintiff's naked assertion that merely because defendants' counsel was in regular communication with his client during the process of negotiating the settlement, this constituted a deficiency in settlement authority and a concomitant failure of meeting of the minds.  This particular card in plaintiff's deck of cards was definitively trumped by this Court in *United States v. Lightman*, 988 F. Supp. 448 (D.N.J. 1997) where the general rule that "negotiations of an attorney are not binding on the client unless the client has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be   justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client" was applied to situations like the case at bar to establish the existence, as expected, that the attorney did indeed have the authority clearly indicted by the record set forth in the papers submitted to the Court on the original motion.

Nothing in the record contradicts that record or the obvious inference from it. Indeed, the facts that plaintiff would have this Court believe undermine the suggestion of settlement authority are, as noted by the Court in *Lightman*, actually **demonstrate** the presence of such authority, exercised prudently and professionally, not its absence:

> [E]ven when Mr. Matthews explicitly reserved the right to check with his client regarding the acceptability of the terms, as, for example, he did in his proposal of February 15, 1996, he spoke with his client, who never subsequently made changes to the terms of his proposal, which all the parties regarded as a firm offer, as discussed above. Under these circumstances, the only reasonable conclusion the JDG could have reached was that Mr. Matthews had the authority to bind Stepan to the funding agreement based upon Stepan's manifested assent to Matthews' conduct. Accordingly, this court finds that Stepan's counsel Robert Matthews acted with both actual and implied authority when he made an offer of proposed funding principles that was accepted by the JDG.

988 F. Supp. at 465.   The Court ordered the unwritten, and of course unsigned, settlement agreement to be enforced because its essential terms were not in doubt.

For these reasons we urge the Court to grant the pending motion and to order such other relief as is just and appropriate under the circumstances.[1]

Respectfully submitted,

ARCHER & GREINER
A Professional Corporation

BY: *Ronald D Coleman*
        Ronald D. Coleman

cc:  ECF Counsel

---

[1] We also respectfully reiterate our request that the Court address the pending unopposed motions to relieve Brian Farkas as counsel and to admit John J Tiemessen, Esq. pro hac vice.